UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| COURTESY AUTOMOTIVE GROUP, INC., dba COURTESY SUBARU OF CHICO,<br><br>    Plaintiff,<br><br>    v.<br><br>SUBARU OF AMERICA, INC. and DOES 1-50, inclusive,<br><br>    Defendant. | No. 2:22-cv-00997 WBS DMC<br><br>ORDER RE: MOTION TO DISMISS |

----oo0oo----

Plaintiff Courtesy Automotive Group, Inc. ("Courtesy") brought this action against defendant Subaru of America, Inc. and Does 1-50 (collectively "Subaru") in California Superior Court, County of Butte. (Notice of Removal (Docket No. 1).) Defendant removed to this court based on diversity of citizenship. (Id.) Plaintiff alleges claims for breach of contract (Claims 1 and 4), breach of the covenant of good faith and fair dealing (Claims 2 and 5), account stated (Claim 3), violation of California Unfair Competition Law ("UCL") (Claim 6), intentional and negligent

1

misrepresentation (Claims 7 and 8), and unjust enrichment (Claim 9) relating to attorney's fees that defendant allegedly owes plaintiff, and plaintiff's letter of credit which defendant allegedly called in violation of parties' contract.  (First Am. Compl. ("FAC") (Docket No. 24).)

I.   Factual Background

The court takes the following factual allegations as true and draws every factual inference in plaintiff's favor.

Plaintiff and defendant are engaged in a longstanding commercial dispute about plaintiff's construction of a Subaru dealership facility.  This dispute was the subject of a protest before the California New Motor Vehicle Board (the "Board") and a related litigation in federal district court.  (FAC ¶ 9.)

The parties initially resolved both actions and entered into a confidential settlement agreement (id. Ex. 1 Ex. 1 ("Settlement")) on March 20, 2019.  (Id. ¶ 10.)  Pursuant to the Settlement, the Board maintained jurisdiction over the dispute solely to enforce the Settlement if required in the future.  (Id. ¶ 22 & Ex. 1 ¶ 18.)  Also pursuant to the Settlement, parties entered into another agreement ("Dealer Agreement") that, among other things, set forth benchmark dates for plaintiff's completion of a permanent Subaru facility in Chico, CA.  (Id. ¶ 16; Settlement ¶ 15.)  The Settlement was amended twice: first, on October, 17 2019, to add a Facility Addendum establishing certain construction deadlines (id. Ex. 3 ("Facility Addendum")); and second, on May 21, 2020, to push back the construction deadlines after plaintiff missed all previous ones (id. Ex. 4 ("Facility Amendment")).

1              Two broad provisions of the Settlement are mainly at
2    issue here.  The first provides that should any party commence a
3    legal proceeding to enforce or interpret the Settlement, the
4    prevailing party will recover its attorneys' fees and costs.
5    (FAC ¶ 23; Settlement ¶ 38.)  The second provision requires
6    plaintiff to provide defendant a $750,000 letter of credit in
7    order to insure plaintiff's performance under the Dealer
8    Agreement.  (Id. ¶ 17; Settlement ¶ 15(b); Facility Addendum ¶
9    3(b).)
10             Both provisions became relevant once defendant issued
11   plaintiff a notice of noncompliance with the Settlement on August
12   24, 2020.  (FAC ¶ 24.)  A week later, plaintiff invoked the
13   Board's continuing jurisdiction to enforce the Settlement and
14   resolve parties' dispute.  (Id.)  The Board appointed an
15   administrative law judge ("ALJ") to determine whether plaintiff
16   materially failed to comply with the terms of the Settlement.
17   (Id.)  Parties appeared before the ALJ for oral argument in
18   September and October of 2021.  (Id. Ex. 6 ("ALJ Decision") ¶
19   17.)
20             While the ALJ proceeding was pending, plaintiff was
21   notified on March 8, 2022 by BMO Harris, the bank that issued the
22   letter of credit, that defendant was calling the letter.  (Id. ¶
23   26.)  On March 21, BMO Harris released the letter of credit
24   funds to defendant.  (Id. ¶ 30.)
25             Three days later, on March 24, 2022, the ALJ issued her
26   decision.  (Id. ¶ 31.)  The ALJ Decision found that plaintiff did
27   not materially breach the Settlement or Dealer Agreement because
28   any nonperformance was excused by force majeure events -- namely,

the arrival of the COVID-19 pandemic and a devastating fire that decimated nearby Paradise, CA and caused significant delays for construction projects in Chico.  (Id. ¶ 32; ALJ Decision ¶¶ 261-70.)

On March 28, 2022, plaintiff sent defendant a demand for attorneys' fees and costs pursuant to the Settlement's provision for fees.  (FAC ¶ 35.)  Defendant refused, and sought review of the ALJ decision in Alameda County Superior Court on May 5, 2022.  (Id. ¶¶ 36, 46-51.)  The Alameda court denied defendant's request twice, the second time with prejudice on April 4, 2023.  (Id. ¶¶ 48-51.)  Specifically, the Alameda court held in relevant part that the ALJ Decision was properly binding and non-appealable pursuant to parties' own negotiated terms.  (Docket No. 27-1 Exs. 1-2 ("Alameda Orders"); Settlement ¶ 28(b).)

On June 22, 2022, shortly after the ALJ Decision issued, plaintiff filed a separate petition with the Board to request a Department of Motor Vehicles ("DMV") investigation into whether defendant violated California law and the terms of the Settlement by refusing to provide Subaru signage specifications to plaintiff.  (FAC ¶ 56; id. Ex. 7 ("DMV Petition").)  The Board approved the petition and ordered the DMV to investigate ("DMV Investigation").  (Id. Ex. 8.)

II.  Procedural History

On April 6, 2023, plaintiff filed its original complaint in Butte County Superior Court.  (FAC ¶ 37.)  On June 8, defendant removed the action to this court based on federal diversity jurisdiction.  (Id. ¶ 38.)

4

1  Previously, defendant moved to dismiss, and plaintiff
2 moved to file an amended complaint because certain documents
3 relevant to the complaint were no longer under seal. (Docket
4 Nos. 20, 21.)  The court denied defendant's motion to dismiss
5 without prejudice and granted plaintiff's request to file its
6 amended complaint.  (Docket No. 23.)  Plaintiff filed that
7 amended complaint on October 2, 2023.  (FAC.)  Defendant now
8 moves to dismiss the amended complaint.  (Mot. (Docket No. 25).)
9 III. Legal Standard
10  Federal Rule of Civil Procedure 12(b)(6) allows for
11 dismissal when the plaintiff's complaint fails to state a claim
12 upon which relief can be granted.  See Fed. R. Civ. P. 12(b)(6).
13 The inquiry before the court is whether, accepting the
14 allegations in the complaint as true and drawing all reasonable
15 inferences in the plaintiff's favor, the complaint has alleged
16 "sufficient facts . . . to support a cognizable legal theory,"
17 Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001), and thereby
18 stated "a claim to relief that is plausible on its face," Bell
19 Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  In deciding
20 such a motion, all material allegations of the complaint are
21 accepted as true, as well as all reasonable inferences to be
22 drawn from them.  Id.
23  The court "need not accept as true legal conclusions or
24 '[t]hreadbare recitals of the elements of a cause of action,
25 supported by mere conclusory statements.'"  Whitaker v. Tesla
26 Motors, Inc., 985 F.3d 1173, 1176 (9th Cir. 2021) (quoting
27 Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009)).
28 IV.  Discussion

5

Plaintiff's claims can generally be sorted into two categories: those relating to attorneys' fees (Claims 1-3), and those relating to the letter of credit (Claims 4-9).

### A. Attorneys' Fees

#### 1. Breach of Contract (Claim 1)

Plaintiff's breach of contract claim for unpaid attorneys' fees has two different factual predicates: the ALJ proceeding, and plaintiff's petition to the DMV for an investigation.

##### (i) ALJ Proceeding

Plaintiff alleges that defendant is in breach of a contractual promise to pay for plaintiff's legal fees related to the ALJ proceeding. That alleged promise is set forth in Paragraph 38 of the Settlement, which provides that "[s]hould it become necessary for any Party to this [Settlement] to commence a legal proceeding for the purpose of enforcing or interpreting the terms of this [Settlement], the prevailing party in such action shall be entitled to recover its reasonable attorneys' fees and costs incurred for prosecuting or defending the action."[1] (Settlement ¶ 38.)

Plaintiff pleads facts sufficient to sustain its breach

---

[1] Defendant argues that Paragraph 11 of the Settlement should apply, not Paragraph 38. Paragraph 11 states that "Both Parties acknowledge and agree that each party is solely responsible for its own attorneys' fees, costs and expenses in all circumstances, including the Lawsuit and the Protest." (Settlement ¶ 11.) Defendant's proffered interpretation would render Paragraph 38 entirely superfluous. Therefore, the court determines Paragraph 11 more naturally applies to fees incurred in the Board protest and lawsuit preceding the Settlement.

1 of contract claim at this stage.  Black's Law Dictionary defines
2 "legal proceeding" as "Any proceeding authorized by law and
3 instituted in a court or tribunal to acquire a right or to
4 enforce a remedy."  Black's Law Dictionary (11th ed. 2019).  The
5 ALJ proceeding was a legal proceeding[2] pursuant to Paragraph 38
6 for the following reasons.  The ALJ proceeding was designed and
7 entered into pursuant to the parties' own negotiated agreement.
8 (Settlement ¶ 28.)  It was further authorized by the Board
9 pursuant to its continuing jurisdiction over the parties' Board
10 Protest.  (Id. ¶ 28(b).)  Its purpose was to determine whether
11 defendant had a right to terminate plaintiff's Subaru franchise
12 due to plaintiff's alleged non-compliance with the Settlement
13 terms.  (Id. ¶ 28.)  It had all the hallmarks of an adjudicative
14 process, as it featured the live testimony and examination of
15 witnesses, extensive briefing, discovery, deposition
16 designations, and seven days of live hearing before the ALJ.
17 (See generally FAC Ex. 6 ("ALJ Decision").)  The ALJ's decision
18 also involved the "appl[ication of] the common law of contracts
19 to interpret the text of a stipulated decision in order to
20 determine whether specified conditions have been met," as

---

[2] Parties focus much of their briefing on whether the ALJ proceeding was an "action on a contract" pursuant to California Civil Code § 1717.  However, the relevant question is whether the ALJ proceeding was a legal proceeding, not whether it was an "action on a contract" pursuant to Section 1717.  Even if Section 1717 did not apply to the ALJ proceeding, as defendant argues, nothing precludes the parties from setting by contract the measure and mode of counsels' compensation.  See Cal. Civ. Proc. Code § 1021 ("the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties").

confirmed by the Alameda County Superior Court upon defendant's appeal of the ALJ decision to that court. (Docket 27-1 Ex. 1 ("Alameda Decision I") at 7.)[3] Finally, plaintiff was the prevailing party regarding whether the set of facts upon which defendant rested its August 24, 2020 Notice of Non-Compliance constituted a material breach of the Settlement, thereby justifying the termination of plaintiff's Subaru franchise. The ALJ Decision concluded no, which pursuant to parties' agreement is a "binding, non-appealable determination," i.e., "a final, binding settlement of the matter at issue [that waives] any and all recourse, right of action, or appeal with respect to the resulting ruling . . . ."[4] (Settlement ¶ 28(b)-(c).) This finality was further confirmed by the Alameda County Superior Court, which twice held that the ALJ had lawful jurisdiction to determine the existence of a material breach of the Settlement and that the parties, by mutual consent, waived any right to

---

[3] See also id. at 4 ("The Court is particularly mindful of the fact that the parties elected to adjudicate the dispute before one of the Board's ALJ's -- an open and public process -- and not via private, confidential, and binding arbitration. The parties' Agreement sought to treat the ALJ like a private mediator . . . . For better or worse, the parties lack the power to transform an ALJ into a private arbitrator.").

[4] Defendant argues that plaintiff was not the prevailing party because the ALJ Decision was issued "without prejudice" and prevented defendant from terminating plaintiff's Subaru franchise "at this time." (Mot. at 20 (citing ALJ Decision Conclusion).) However, the ALJ Decision is most sensibly read to preserve defendant's right to terminate the franchise on different facts, in a different proceeding. This accords with the non-appealability of the ALJ Decision as provided by the parties' own contract (see Settlement ¶ 28(c)) and by the Alameda County Superior Court's denial, with prejudice, of defendant's appeal of the ALJ Decision.

1    appeal that determination.  (See generally Alameda Decision I;
2    Docket 27-1 Ex. 2 ("Alameda Decision II").)  The ALJ proceeding
3    therefore is a legal proceeding whose resolution requires the
4    losing party to pay fees and costs of the prevailing party --
5    namely, plaintiff.
6         The complaint therefore alleges sufficient facts to
7    support a viable breach of contract claim on unpaid attorneys'
8    fees relating to the ALJ proceeding.  Accordingly, the court will
9    not dismiss this claim on this basis.
10                  (ii) DMV Petition and Investigation
11        Plaintiff also seeks attorneys' fees relating to a
12   separate Department of Motor Vehicles ("DMV") petition that it
13   filed on June 22, 2022, requesting the DMV to investigate whether
14   defendant violated certain provisions of the Vehicle Code.  (FAC
15   ¶¶ 56-59.)
16        With regard to this petition, plaintiff pleads no facts
17   as to a "prevailing Party" under Paragraph 38.  Plaintiff appears
18   to argue that the DMV's grant of an investigation into
19   plaintiff's allegations (FAC Ex. 8) alone renders it a prevailing
20   party.  However, the mere grant of the investigation does not
21   address the merits of plaintiff's allegations; the
22   investigation's findings will do that. See The Travelers Indem.
23   Co. v. Lara, 84 Cal. App. 5th 1119, 1139 (7th Dist. 2022)
24   (prevailing "constitutes a final determination on the merits of
25   [a] challenge . . . , not simply a procedural victory in an
26   ongoing lawsuit").  Therefore, plaintiff has not sufficiently
27   alleged a breach of a contractual promise to perform.
28        Accordingly, the court will dismiss plaintiff's breach

9

of contract claim to the extent that plaintiff requests fees and costs incurred in relation to the DMV petition and investigation. The court will otherwise deny defendant's motion to dismiss as to this claim.  Plaintiff may amend its complaint to allege facts regarding the prevailing party in the DMV dispute, if it is able to do so.

### 2. Breach of the Covenant of Good Faith and Fair Dealing (Claim 2)

If a claim for breach of the implied covenant of good faith and fair dealing merely restates a breach of contract, and further seeks the same remedy from the same allegations, it "may be disregarded as superfluous as no additional claim is actually stated."  Sprint Spectrum Realty Co., LLC v. Hartkopf, No. 19-CV-03099-JSC, 2021 WL 1839705, at *6 (N.D. Cal. May 7, 2021) (citing Careau & Co. v. Sec. Pac. Bus. Credit, Inc., 222 Cal. App. 3d 1371, 1395 (2d Dist. 1990)).

Plaintiff's implied covenant claim is a near-verbatim recitation of the allegations supporting its breach of contract claim, down to the dollar amount in remedies sought.  (Id. ¶¶ 70-83; cf. id. ¶¶ 60-69.)   It is therefore superfluous. Accordingly, the court will dismiss Claim 2.  Dismissal of this claim is with prejudice, as it is wholly duplicative of plaintiff's breach of contract claim.

### 3. Account Stated (Claim 3)

The court will also dismiss plaintiff's account stated claim with prejudice.  "An 'account stated' is 'an agreement, based on prior transactions between the parties, that all items of the account are true and that the balance struck is due and

1  owing from one party to the other.'"  Martini E Ricci Iamino
2  S.P.A.--Consortile Societa Agricola v. Trinity Fruit Sales Co.,
3  30 F. Supp. 3d 954, 976 (E.D. Cal. 2014) (Ishii, J.) (citing
4  S.O.S., Inc. v. Payday, Inc., 886 F.2d 1081, 1091 (9th Cir.
5  1989)).  It "constitutes a new contract which supersedes and
6  extinguishes the original obligation . . . .  [A] debt which is
7  predicated upon the breach of the terms of an express contract
8  cannot be the basis of an account stated."  Id. at 976-77
9  (citations omitted).
10         What plaintiff alleges that defendant "impliedly agreed
11 it would pay" (FAC ¶ 89) is in fact set forth as an express
12 contractual term, whose applicability parties now contest.
13 (Settlement ¶ 38.)  Plaintiff alleges no facts of a subsequent
14 superseding agreement, implied or otherwise, by which defendant
15 acknowledged an outstanding balance that it owes to plaintiff --
16 plaintiff's every allegation regarding its breach of contract
17 claim in fact suggests the exact opposite.  The court will
18 therefore dismiss Claim 3 with prejudice.
19     B.   Calling the Letter of Credit
20         The ALJ Decision found that plaintiff had not
21 materially breached the Settlement.  Plaintiff argues that this
22 precludes defendant from calling the letter of credit based on
23 the same facts examined by the ALJ.  Defendant disagrees, arguing
24 that the ALJ decision only precluded defendant from terminating
25 plaintiff's franchise on the same facts, but did not otherwise
26 prevent defendant from calling the letter of credit.
27         Pursuant to the Settlement, both parties were required
28 to execute a new Dealer Agreement.  (Settlement ¶ 15.)  The

11

Dealer Agreement had to include a facility addendum, one of whose terms required plaintiff to provide "a $750,000 letter of credit or performance bond to insure [plaintiff's] performance on its commitment to the new ground-up facility on the [new Subaru facility]." (Id. ¶ 15(b).) The parties duly executed the Facility Addendum in May 2019, which set forth various construction benchmarks and included the letter of credit provision. (Facility Addendum ¶ 3(b).) The Facility Addendum also incorporated all terms of the Settlement. (Id. ¶ 5.)

Plaintiff obtained the letter of credit from BMO Harris on June 22, 2020. (See FAC Ex. 5 ("Letter of Credit").) Defendant could call the letter by writing to BMO Harris the following: "Courtesy Automotive Group, Inc. has failed to fulfill its obligations pursuant to the Facility Addendum to the Subaru Dealer Agreement between [plaintiff and defendant]. Therefore, we are drawing [upon the letter]." (Letter of Credit ¶ 1.)

        1. <u>Breach of Contract</u> (Claim 4)

The court must determine whether any provisions of the Settlement and incorporated documents limit defendant's ability to call the letter of credit.

Paragraph 3 of the Facility Addendum permits plaintiff to conduct Subaru operations at a temporary facility, on certain conditions. (Facility Addendum ¶ 3.) One of those conditions relates to the letter of credit: "Dealer provides a $750,000 letter of credit or performance bond . . . to insure Dealer's performance on its commitment to construct the Permanent Facility." (Id. ¶ 3(b).) No other provision refers to the

letter of credit.[5]

Paragraph 21 of the Settlement is a force majeure provision: "Should [] an event of force majeure take place, [defendant] shall extend the time periods . . . to allow for delays incurred as a result of the event of force majeure." (Settlement ¶ 21.)

Put together, these two provisions prohibit defendant from calling the letter of credit based on plaintiff's delay caused by a force majeure event. The letter of credit was issued to insure plaintiff's performance on constructing a permanent Subaru facility, subject to the benchmark dates that were set forth in the Facility Addendum and Facility Amendment. Or, as defendant puts it, "the assurance sought [by the letter of credit] was the timely construction of a complaint Subaru dealership." (Mot. at 23.) However, the force majeure provision of the Settlement requires defendant to change what "timely" is

---

[5] Defendant asserts that it has an independent right to call the letter of credit because of the following statement in the Facility Amendment: "[S]hould the facility not be completed by the agreed upon date, [Defendant] will execute the Letter of Credit or Performance Bond that secures this amendment." (Mot. at 22; Facility Amendment at 1.) However, this is a statement of intent, not a provision in the parties' agreement. The Facility Amendment comprises a letter from defendant to plaintiff, whose opening paragraphs contain prefatory statements about construction benchmarks that plaintiff had missed to date. (Facility Amendment at 1.) This prefatory section also contains the statement in question. Only after that does the letter then state: "Your Agreement is amended as follows: [various adjustments to benchmark dates]." (Id.) The letter concludes: "Please acknowledge your agreement with the terms of this amendment with your signatures." (Id. at 2.) Only those amendments, agreed to by plaintiff, are integrated into parties' agreement.

13

to account for delays caused by force majeure events. Parties do not dispute that plaintiff's delays were caused by force majeure events. (See generally ALJ Decision.) The Settlement therefore requires defendant to extend the deadlines in the Facility Amendment to accommodate for the delays, and precludes defendant from triggering the letter of credit based on delays caused by force majeure events.[6]

Accordingly, plaintiff sufficiently alleges a breach of contract based on defendant's call on the letter of credit.

### 2. Breach of the Covenant of Good Faith and Fair Dealing (Claim 5)

As is the case with plaintiff's breach of the covenant of good faith and fair dealing claim premised on the non-payment of attorneys' fees, this claim too merely restates the same allegations and remedies sought by plaintiff's cognate breach of contract claim. Accordingly, the court will dismiss this claim with prejudice.

### 3. Unfair Competition Law (Claim 6)

Not every plaintiff may bring a UCL claim.

---

[6] Defendant argues that plaintiff's breach of contract claim is premised on California Commercial Code § 5110, which provides that a beneficiary of a letter of credit warrants to the applicant that calling the letter does not violate any agreements between them. Cal. Comm. Code § 5110. Defendant then argues that Section 5110 is inapplicable because plaintiff contracted with BMO Harris, a Canadian bank, and therefore Canada law and International Standby Practices 1998 should apply instead of California law. (Mot. at 22-25.) This argument fails. The present dispute is between plaintiff and defendant, not plaintiff and BMO Harris. Further, any alleged breach is premised on what the contract between plaintiff and defendant permits and forbids; the validity of the letter of credit or the meaning of any of its terms is not in dispute here.

14

1  "[C]orporate plaintiffs face an uphill battle.  When a UCL claim
2  is based on a contract that does not involve the public or
3  individual consumers, a corporate plaintiff cannot use the
4  statute for the relief it seeks."  Hale Bros. Inv. Co., LLC v.
5  StudentsFirst Inst., No. 2:16-CV-02284-JAM-EFB, 2017 WL 590255,
6  at *10 (E.D. Cal. Feb. 14, 2017) (citing Linear Tech. Corp. v.
7  Applied Materials, Inc., 152 Cal. App. 4th 115, 135 (6th Dist.
8  2007)).  This is because "[t]he UCL was enacted to protect both
9  consumers and competitors by promoting fair competition in
10 commercial markets for goods and services.  [. . .]  The central
11 issue presented under the UCL is whether the public at large, or
12 consumers generally, are affected by the alleged business
13 practice of defendants.  Thus, a UCL claim fails if it lacks any
14 connection to the protection of fair competition or the general
15 public."  Sacramento E.D.M., Inc. v. Hynes Aviation Indus., Inc.,
16 965 F. Supp. 2d 1141, 1154 (E.D. Cal. 2013) (England, J.)
17 (citations omitted).
18         Here, plaintiff's UCL claim arises out of its business
19 relationship with defendant and does not appear to involve the
20 public in general or individual consumers who were harmed by
21 defendant's alleged practices.  The complaint is also devoid of
22 any allegations that parties are competitors, or that defendant's
23 alleged practices had a negative effect on competition.  The only
24 injury alleged in plaintiff's sixth claim is the amount of the
25 letter of credit and attorneys' fees.  (Compl. ¶¶ 161-64.)
26 Nothing in the complaint suggests that individual consumers or
27 the public at large were harmed as a result of defendant's
28 alleged wrongdoing.  Because the complaint, as pled, fails "to

establish the requisite public or individual consumer interest as required under California law," it fails to state a viable UCL claim.  See In re Webkinz Antitrust Litig., 695 F.Supp.2d 987, 998-99 (N.D. Cal. 2010).

Accordingly, the court will dismiss plaintiff's UCL claim.  Dismissal will be without prejudice; plaintiff may allege additional facts regarding harm to the public at large or consumers generally if it is able to do so.

### 4. Intentional and Negligent Misrepresentation
### (Claims 7 and 8)

Plaintiff's claims for intentional and negligent misrepresentation are premised on allegations that defendant misled BMO Harris about whether plaintiff failed to meet its obligations under parties' agreement.  (Compl. ¶¶ 167, 187.) Alternatively, plaintiff argues that defendant made a misrepresentation to plaintiff directly by way of California Commercial Code § 5110, which requires the beneficiary of a letter of credit (here, defendant) to warrant to the applicant (here, plaintiff) that calling the letter does not violate any agreement between the applicant and beneficiary.  Cal. Com. Code § 5110(a)(2).[7]  (Compl. ¶ 170.)

Either way, plaintiff fails to sufficiently allege plaintiff's own reliance on defendant's alleged misrepresentation, which is a core element to both intentional

---

[7] Defendant reiterates its choice of law argument on the inapplicability of Section 5110 against plaintiff's misrepresentation claims.  (Docket No. 28 at 11-12.)  The argument fails for the same reasons addressed above.  (See supra, at 14 n.7.)

16

1  and negligent misrepresentation claims.  See PEO Experts CA, Inc.
2  v. Engstrom, No. 217-CV-00318-KJM-CKD, 2018 WL 3817561, at *4
3  (E.D. Cal. Aug. 10, 2018) (citing Engalla v. Permanente Med.
4  Grp., Inc., 15 Cal. 4th 951, 974-75 (1977)) (elements of
5  intentional misrepresentation); Yamauchi v. Cotterman, 84 F.
6  Supp. 3d 993, 1018 (N.D. Cal. 2015) (citing Ragland v. U.S. Bank
7  Nat. Assn., 209 Cal. App. 4th 182, 196 (4th Dist. 2012))
8  (elements of negligent misrepresentation).

9       While a misleading statement to a third party can
10 occasion a claim for misrepresentation, a plaintiff still must
11 show that it received, however indirectly, and ultimately relied
12 on the substance of a defendant's misleading statements.  See,
13 e.g., Carlin v. DairyAmerica, Inc., 978 F. Supp. 2d 1103, 1113-15
14 (E.D. Cal. 2013) (Ishii, J.) (substance of material fact
15 ultimately reached plaintiff and changed conduct); Jones v. AIG
16 Risk Mgmt., Inc., 726 F. Supp. 2d 1049, 1058 (N.D. Cal. 2010)
17 ("But even where an indirect misrepresentation is involved, there
18 must still be reliance, and the reliance must be on the part of
19 the indirect recipient of the misrepresentation.") (citing Mirkin
20 v. Wasserman, 5 Cal. 4th 1082, 1096 (1993) (stating that, "[a]s
21 the language of the Restatement indicates, a plaintiff who hears
22 an alleged misrepresentation indirectly must still show
23 'justifiable reliance upon it'")).

24      Here, plaintiff fails to allege any facts showing that
25 plaintiff changed its conduct or otherwise demonstrated any kind
26 of reliance on defendant's alleged communication to BMO Harris.
27 Plaintiff simply alleges that it was harmed by defendant's
28 misrepresentation to BMO Harris.  Reliance is clearly alleged as

1   to BMO Harris (it released the letter of credit funds based on
2   defendant's representation to it that plaintiff breached the
3   Settlement), but entirely missing as to plaintiff.
4           Accordingly, the court will dismiss plaintiff's
5   intentional and negligent misrepresentation claims without
6   prejudice.
7                5.   Unjust Enrichment (Claim 9)
8           Unjust enrichment is an "action in quasi-contract,
9   which does not lie when an enforceable, binding agreement exists
10  defining the rights of the parties." Paracor Fin., Inc. v. Gen.
11  Elec. Cap. Corp., 96 F.3d 1151, 1167 (9th Cir. 1996); see also
12  Smart v. Nat'l Collegiate Athletic Ass'n, No. 1:23-CV-00425 WBS
13  KJN, 2023 WL 4827366, at *8 (E.D. Cal. July 27, 2023) ("a
14  plaintiff cannot sustain a claim under . . . unjust enrichment[]
15  where there is an enforceable contract").
16          Here, neither party disputes the existence of a binding
17  contract.  The facts and damages that plaintiff alleges, and the
18  relief plaintiff seeks through this claim, are already
19  encompassed by plaintiff's breach of contract claim regarding the
20  letter of credit.
21          Accordingly, the court will dismiss this claim with
22  prejudice.
23          IT IS THEREFORE ORDERED that defendant's motion to
24  dismiss (Docket No. 25) be, and the same hereby is, DENIED as to
25  Claim 1 to the extent that plaintiff alleges attorneys' fees
26  incurred in relation to the ALJ proceeding.  It is otherwise
27  GRANTED as to Claim 1 with leave to amend.
28          IT IS FURTHER ORDERED that defendant's motion to

1  dismiss be, and the same hereby is, DENIED as to Claims 4, and
2  GRANTED as to Claims 2, 3, 5, 6, 7, 8, and 9.  Claims 2, 3, 5,
3  and 9 are dismissed with prejudice.  Claims 6, 7, and 8 are
4  dismissed without prejudice.
5         Plaintiff has fourteen days from the date of this order
6  to file an amended complaint, if it can do so consistent with
7  this Order.
8  Dated:  December 14, 2023

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE